UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| MARCY DARNELL HUGHES, | ) |
|---|---|
| Plaintiff, | )<br>)<br>) NO. 2:16-CV-367 |
| vs. | )<br>) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's Disability Insurance Benefits application under Social Security Act, Title II (the "Act") was denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Plaintiff and Defendant filed Motions for Summary Judgment [Docs. 19, 24]. Plaintiff filed a response [Doc. 26].

### I.    APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow.  The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards.  42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986).  A Court may not try the case *de novo*, resolve conflicts

1

in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007). The Court may consider any evidence in the record regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. §§ 404.1520 & 416.920. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II.     RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A.     Procedural History

Marcy Darnell Hughes ("Hughes") was a younger person at the time of her application. 20 C.F.R. § 404.1563. She alleged an onset date of July 22, 2011, as amended at the hearing, and had insured status through March 31, 2014. (Doc. 14, Transcript pp. 11, 35) (reference to "Tr" and the page denote the record). She alleged several impairments she believed to be disabling.

Hughes' claims were initially denied in April 2014 and upon reconsideration in July 2014. (Tr. 11). An ALJ conducted a hearing on October 6, 2015. Hughes and a vocational expert ("VE") testified. (Tr. 32-54). The ALJ followed the five-step analysis in evaluating the claims. The ALJ found Hughes had severe medical impairments. (Tr. 11). However, the ALJ ultimately made the dispositive finding that she was not disabled. The findings were:

1. The claimant last met the insured status requirements of the Social Security Act through March 31, 2014;

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 22, 2011 through her date last insured of March 31, 2014 (20 CFR 404.1571 *et seq.*);

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease; diabetes mellitus; obesity; asthma; and depression (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of

> one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526);
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to pulmonary irritants and hazards; and she is able to perform simple, routine tasks and persist on said tasks for two-hour periods.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565);
>
> 7. The claimant was born [in August 1965] and was 48 years old, which is defined as a younger individual age 45-49, on the date last insured date (20 CFR 404.1563);
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a)); and
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, from July 22, 2011, the alleged onset date, through March 31, 2014, the date last insured (20 CFR 404.1520(g)).

(Tr. 20-30).[1] The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B.     Evidence in the Record**

The ALJ summarized the evidence. (Tr. 15-22). Hughes' brief [Doc. 20] does not include

---

[1] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

an overview of the record evidence; the Commissioner's brief reviews the record in detail [Doc. 25, pp. 1-6]. The transcript contains the reports of the treating physician, medical examiner and state agency reviewers who addressed Hughes's physical and mental conditions. (Tr. 95-106, 110-28, 545-72, 762-70, 809-15, 848-55). Reference to the evidence is only set forth as necessary.

### III. ANALYSIS

Hughes asserts two errors. First, she urges the ALJ erred in applying her age as of the date last insured, at which time she was a younger person (20 C.F.R. 404.1563(c)), rather than her age at the time of the Decision when she would be a person closely approaching advanced age.. Next, she argues that the Commissioner failed to satisfy the burden of proof at step five, specifically that work exists in significant numbers in the regional or national economy. Via her response to Defendant's dispositive motion, she newly asserts that a conflict exists between the Vocational Examiner's ("VE") testimony and the Dictionary of Occupational Titles and that the VE's testimony that one does not exist is inadequate. The Commissioner opposes Hughes's motion and seeks summary judgment on the basis that substantial evidence supports the ALJ's Decision.

#### A. Applicable Age

Hughes alleges that because she was 50 years-old at the time of the Decision, the ALJ should have treated her as a person closely approaching advanced age under 20 C.F.R. 1563(d). She believes that such categorization would result in a finding of disability under the Medical-Vocational Rules given the sedentary residual function capacity established by the ALJ. She does not elaborate on this argument or provide grounds for the Court to consider whether this is the case. Hughes relies upon *Varley v. Sec'y of Health & Human Serv.s*, 820 F.2d 777, 780 (6th Cir. 1987) and *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987), for the proposition that a claimant's age as of the time of the decision governs in applying the regulations.

However, age at the time of the decision only controls if the claimant's insured status has not previously expired.[2] In fact, Social Security Ruling 83-10, which remains in effect, provides that "[w]hen the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured. In these situations, the person's age at the time of decisionmaking is immaterial." Further, a party must show disability existed prior to expiration of insured status. See 20 C.F.R. § 404.130; *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). Reaching an age which might impact disability after such status has expired does not allow for a disability finding. This is further confirmed by subsequent opinions on the Sixth Circuit. *See Curtis v. Sec'y of Health & Human Servs.*, 880 F.2d 414, *3 (6th Cir. 1989) (finding that the date of expiration of insured status was the critical date for determining age).

**B.        Conflicts in Dictionary of Occupational Titles and Vocational Examiner Testimony**

Hughes asserts that a conflicts exist between the VE's testimony and Dictionary of Occupational Titles ("DOT") and that the VE's affirmation that her testimony was consistent with the DOT does not resolve the conflict. Hughes specifically argues that the ALJ's restriction limiting Plaintiff to "routine tasks and persisting on said tasks for two-hour periods" eliminates her ability to perform the job of surveillance system monitor as listed in the DOT.

Hughes alleges no error with regard to the document preparer and addressing clerk occupations that the VE testified that a claimant with her limitations can perform. Hughes only

---

[2] *Varley* and *Maziarz* do not control in cases in which the claimant's insured status expired before the ALJ's decision. In fact, a close review of the discussions of the claimants' respective situations in these cases shows that the claimants' conditions and limitations were addressed in the present tense as opposed discussions of past limitations or past marketable skills, for example. This reveals that both claimants remained in insured status at the time of the decisions, thus requiring use of their ages at that time. *Varley*, 820 F.2d at 781, *Maziarz*, 837 F.3d. 244-46. Thus, these cases are consistent with the law cited herein.

limits her grounds for error to the surveillance system monitor job. Thus, the availability of the document preparer and addressing clerk positions supports the ALJ's Decision and renders immaterial any purported error regarding consistency between the DOT and VE testimony as to a surveillance system monitor job. Nevertheless, the Court will address Hughes's allegations of error.

First, Hughes's brief fails to cite the particular DOT job description language for the Court to consider or even articulate the specific claimed discrepancy. Plaintiff has the obligation to demonstrate the basis for relief and has not done so. Relief is not warranted based upon the claimant merely stating error exists.

With regard to conflicts between a VE's testimony and the DOT, SSR 00-4P provides that an ALJ should "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the . . .[DOT] . . .." The ALJ's duty is satisfied if the ALJ asks the VE whether his or her testimony is consistent with the DOT. *See Martin v. Comm'r of Soc. Sec.,* 170 F.App'x 369, 374 (6th Cir. 2006). An ALJ "is not required to affirmatively 'conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Johnson v. Comm. of Soc. Sec.*, 535 F.App'x 498, 508 (6th Cir. 2013) (quoting *Martin*, 170 F.App'x at 374). An ALJ also does not need to address how a conflict is resolved where a claimant fails to call attention to the potential conflict. *Martin*, 170 F.App'x at 374.

Here, Hughes's counsel questioned the VE but did not ask questions about a potential conflict between the VE's testimony and the DOT or otherwise identify this topic as an issue of concern. (Tr. 52-54). Before ending the hearing, the ALJ asked the VE whether her testimony was consistent with the DOT; she responded it was consistent. (Tr. 54).

Contrary to Hughes's contention that asking the vocational expert if her testimony was

7

consistent with the DOT was insufficient, the ALJ proceeded accordance with Sixth Circuit authority with the consistency inquiry. The ALJ was not required to investigate further given the response and the absence of any effort by Hughes's counsel to question the VE about conflicts.

Next, authority in this and other circuits indicates it is inappropriate to allow a claimant to challenge uncontradicted VE testimony as to consistency after the administrative process has concluded:

> Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000) (affirming ALJ's determination and noting a VE's clear and unchallenged testimony was adequate); *see also McKinney v. Astrue*, 2012 WL 2603659 at *9 (E.D. Ky. 2012) (quoting *Carey v. Apfel,* 230 F.3d at 147 regarding claimant's failure to cross examine the VE or object to VE testimony). Hughes cannot now complain about a conflict after she failed to address the purported conflict with the ALJ or via the VE's testimony.

The Court finds the Decision is in accordance with the applicable authority and substantial evidence exists to support the determination that the VE's testimony was consistent with the DOT.

### C.     Work Exists in Substantial Numbers

Hughes claims the ALJ erred in finding that the number of jobs that exist in the national economy that she can perform is significant. She asserts the potential pool of jobs is lessened because she lives in a rural area and because of technological advances.

Under step five, the ALJ must determine if significant numbers of jobs exist in the national economy that the claimant can perform. Both the Act and regulations address this topic. The Act provides that "work which exists in the national economy means work that exists in significant

numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The regulations explain the "significant numbers" requirement:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. §§ 404.1566(b) & 416.966(b).

The Sixth Circuit also offers guidance. First, "[t]here is no bright line boundary separating a 'significant number" from an insignificant numbers of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). The Sixth Circuit has specified factors that can be considered in determining if a number is significant, including the level of claimant's disability, the reliability of the vocational expert's testimony, the reliability of the claimant's testimony, the distance the claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs, and the type and availability of the work. *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988). These factors are, however, "suggestions . . . the ALJ need not explicitly consider each factor," and the Act and regulations "make it clear that the test is whether work exists in the national economy, not in the plaintiff's neighborhood." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999).

Here, the VE testified that a hypothetical claimant with a sedentary RFC and the various limitations described by the ALJ could perform the jobs of surveillance system monitor, document preparer and addressing clerk. (Tr. 51). The VE testified the number of such jobs in the regional economy, i.e. Tennessee, ranged from 30 to 910 and from 4,560 to 45,204 in the national economy. *Id.* With regard to the document preparer position alone, the VE testified there are 910 jobs regionally and 45,204 nationally. *Id.* In comparison, the surveillance system monitor job about

which Plaintiff objected to consistency, has 40 jobs regionally and 4,560 nationally.

In finding that the numbers of jobs identified were significant, the ALJ addressed the suggested factors. The ALJ first determined that Hughes' statements regarding the her pain and other limiting symptoms were not completely credible and that the medical evidence did not support the existence of pain to the degree alleged. (Tr. 19-20). This determination relates to the reliability of the claimant's testimony under *Hall*. The ALJ also noted the level of Hughes' disability by referencing each of her limitations and the sedentary RFC that was adopted and in discussing the number of jobs in the economy that Hughes could have performed. (Tr. 15, 23). This demonstrates the ALJ's consideration of Hughes's level of disability and limitations.

While the ALJ did not expressly address the reliability of the VE's testimony, the record reveals that Hughes stipulated to the VE's qualifications and did not seek otherwise challenge the testimony. (Tr. 33). Likewise, if Hughes felt that the jobs identified are unavailable or isolated or the distance she might have to travel to work would impact the number of jobs, she did not indicate such concern in the questions to the VE. The ALJ had little reason to analyze the reliability of the VE's testimony given the stipulation to qualifications and absence of such a challenge to the testimony. Further, as the Commissioner notes, Plaintiff does not have a travel restriction and mere residency in a rural area does not result in disability benefits for an otherwise non-disabled person. Notably, the applicable regulation confirms this in stating that is does not matter whether work exists in the immediate area where a claimant resides. 20 C.F.R. § 404.1566(a).

With regard to the numbers of jobs identified, extensive authority discusses the numbers that satisfy the threshold of "significant." There is no "magic number" for determining the amount of jobs that constitute significant work in the national economy, but there are various cases within the Sixth Circuit that indicate as few as 200 regional jobs and 6,000 jobs in the national economy

are sufficient.  *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016) (6,000 in national economy jobs "fits comfortably" within what courts have found significant); *Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 375 (6th Cir. 2006) (870 regional jobs constitutes significant work); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x 574, 578-79 (6th Cir. 2009) (finding 2,000 jobs significant); *Putnam v. Astrue*, 2009 WL 838155 (E.D. Tenn. Mar. 30, 2009) (finding 200-250 regional jobs and 75,000 national jobs constitute a significant number).

In light of the foregoing discussion of the *Hall* factors and case law discussing the amount of jobs that satisfy the significant number criteria, the Court finds substantial evidence supports the determination that the numbers of jobs identified by the VE are significant.  This is certainly true of the document preparer position independent of the other two positions the VE identified.

## IV.     CONCLUSION

Based upon the foregoing, the Court finds substantial evidence exists to support the ALJ's decision.  Accordingly, the court RECOMMENDS that Plaintiff's motion for judgment on the pleadings [Doc. 19] be DENIED and the Commissioner's motion for summary judgment [Doc. 24] be GRANTED for the reasons stated herein. [3]

                                                                 SO ORDERED:

                                                                 s/ Clifton L. Corker
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be filed within fourteen (l4) days after service of a copy of this recommended disposition on the objecting party.  28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b).  Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985).   The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections  are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).